**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| Jerome W. Hardwick, | ) | Case No. 25-09698 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Thorne |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on the motion of the debtor, Mr. Jerome Hardwick,  to

dismiss his chapter 7 case.[1]  After review of the docket, the conduct of Jerome Hardwick, his

testimony under oath, the arguments of counsel for lender Continuum Capital Funding II, LLC

(CCF) and the chapter 7 trustee, the court denies the motion to dismiss as Mr. Hardwick has not

established cause for dismissal but rather has demonstrated a lack of good faith throughout this

case and related proceedings and the court concludes that the best interest of his creditors would

not be served by dismissal.

## <u>Background</u>

Mr. Hardwick is the owner of a 24-unit apartment building located at 4311-4319 West

Flournoy Street, Chicago, Illinois (Property).  To secure a Revolving Line of Credit Mortgage

Promissory Note in 2022, in the amount of $200,000, Mr. Hardwick granted CCF a security

interest in the Property by executing a Revolving Line of Credit Mortgage, Security Agreement,

Assignment of Leases and Rents and UCC Fixture Filing recorded with the Cook County

Recorder of Deeds (Dkt. 68, Ex. A.)  As a result of failure to make monthly payments on the

---

[1] Mr. Hardwick previously filed a motion to convert this chapter 7 case to one under chapter 13 (Dkt. # 56.)
On September 9, 2025, he withdrew that motion and now wishes to proceed only with his motion to voluntarily
dismiss his case (Dkt. # 71.)

Note and Mortgage, CCF filed a complaint for foreclosure in the Circuit Court of Cook County in October 2024, and within a short time, CCF obtained an order making it mortgagee in possession under 735 ILCS 5/15-170, authorizing it to collect rents, secure additional tenants, insure the Property and to otherwise care for and preserve the Property.

Almost immediately, Mr. Hardwick filed a chapter 13 petition (case number 24-17723). Although gaining protection from the automatic stay and stopping CCF from prosecuting its foreclosure case in the Circuit Court, the chapter 13 case was dismissed in January 2025 because Mr. Hardwick did not file the required schedules and statement of financial affairs in the bankruptcy case.

After the chapter 13 case was dismissed, CCF again sought to enforce the Circuit Court order allowing it to collect rents.  Once again, Mr. Hardwick filed a chapter 13 case in March 2025 (case number 25-04051).  This case was also dismissed in April 2025 for failure to file required schedules, a statement of financial affairs and to make the first payments to the chapter 13 trustee.

In June 2025, Mr. Hardwick filed a third case, the present case, but this time sought relief under chapter 7.  A chapter 7 panel trustee was appointed to marshal assets and liquidate them for the benefit of Mr. Hardwick's creditors.  Because the June case was the third case filed during the prior year, under 11 U.S.C. § 362(c)(4), the automatic stay is not in effect and CCF is free to exercise its rights as mortgagee in possession and to continue its mortgage foreclosure case. According to CCF, even though the automatic stay was not in effect, Mr. Hardwick did not

cooperate in letting CCF collect rents and, in fact, CCF alleges that Mr. Hardwick obstructed

entry to the Property.[2]

The chapter 7 trustee determined that using the services of CCF as mortgagee in

possession was the most efficient way to ensure that the rents were collected, and that the

Property was maintained.  Accordingly, the chapter 7 trustee asked the court to approve the

employment of CCF and its agents.  The court granted this motion (Dkt. # 17.)  When Mr.

Hardwick again refused to cooperate with CCF and allow the collection of rents and

communication with the Property's tenants, the trustee filed a motion to compel Mr. Hardwick to

allow the collection of rents by CCF for the benefit of the chapter 7 estate.  The court granted

this order on August 7, stating that Mr. Hardwick is to

> comply in all respects with his obligations under the "Order Appointing Mortgagee in
> Possession for Non-Residential Property" entered on November 19, 2024 by the Circuit
> Court of Cook County in case number 24-ch-9183, and shall not impede Continuum
> Capital Funding II, LLC, from exercising their rights pursuant to that order. (Dkt. # 32.)

According to statements made by counsel for CCF and the chapter 7 trustee, Mr. Hardwick has

failed to comply with the August 7 order, has prevented collection of rents, has called the

Chicago Police Department in an attempt to prevent CCF from collecting the rents from the

tenants and from taking possession of the Property and has generally hampered its ability to

communicate with the Property's tenants.

---

[2] Mr. Hardwick testified that the agent for CCF and a tenant had an altercation when the agent appeared at the
Property to collect rents and to change locks.  Mr. Hardwick shared a copy of the Police Report with the court, but it
was not admitted into evidence.

Although the court advised Mr. Hardwick to employ counsel in the case, and he did, the employment was short-lived; employed counsel and Mr. Hardwick apparently failed to see eye to eye and there was a mutual decision to allow counsel to withdraw (Dkt. # 46.)  In the few days that have transpired since the withdrawal or termination of Mr. Hardwick's counsel, Mr. Hardwick has filed several motions seeking to dismiss his case (Dkt. # 47), to vacate the order on motion to confirm termination or absence of stay (Dkt. # 48), and motion to convert case from chapter 7 to chapter 13 (Dkt. # 56.)  Mr. Hardwick withdrew his motion to convert (Dkt. # 71.)  The motion to vacate the order confirming the termination or absence of the stay was denied (Dkt. # 67.)  The chapter 7 trustee and CCF object to the motion to dismiss (Dkt. # 43, 53, 76.)

On September 11, 2025, the court held a hearing on the motion to dismiss.  During the hearing, Mr. Hardwick testified under oath that he "won't honor" the state court order as valid, stating that there was "no due process" in the state court.  Mr. Hardwick also stated that he would "stand on [his] Fourth Amendment" and not allow anyone to seek rent from the tenants of the Property.  Mr. Hardwick argued that he did not realize he had to turnover his assets to a trustee after filing a chapter 7 petition.[3]  He stated that requiring him to turnover his assets violated due process under the Fourth, Fifth, Sixth and Thirteenth Amendments.

Other than explaining that the Property had been in his family for many years, Mr. Hardwick did not explain further why dismissing the case would allow better treatment for creditors in this case or why the collection of rents or maintaining the Property to preserve value would be a violation of any of the Amendments to the Constitution.  The court specifically asked

---

[3] The court's website provides information for unrepresented parties attempting to prepare forms, including petitions seeking relief under chapter 7.

Mr. Hardwick why creditors would be better off if the case was dismissed, and he responded that he had available refinancing for $1.2 to $2 million dollars.  When the court asked whether he had any evidence of the financing he looked at his phone but did not provide anything specific as to the financing, who might provide it or when it might be available. He did not furnish any documents evidencing a financing commitment.

Mr. Hardwick has repeatedly failed to follow the Federal Rules of Bankruptcy Procedure, orders of this court and of the Circuit Court of Cook County.  He never filed completed schedules or a statement of financial affairs.  On September 4, 2025, this court ordered him to file all required Schedules and the Statement of Financial Affairs, signed under penalty of perjury on or before September 10, 2025.  Although on September 9, 2025, Mr. Hardwick filed Schedules I, J and a Statement of Financial Affairs, several schedules are still missing and those that were filed are not complete.  In response to the court's question as to why the schedules were not complete, Mr. Hardwick testified that he had difficulty using the "fillable form" schedules on the court's website.  At the conclusion of the September 11 hearing, the court ordered Mr. Hardwick one more chance to complete his schedules and statement of financial affairs by entering an order that schedules were to be complete and filed on the docket on or before Monday, September 15, 2025.  The court further suggested that if he obtained paper copies from the Office of the Clerk of Court, handwritten copies would be acceptable if filed

with the Clerk.  The court emphasized that truthful disclosure of assets and liabilities is crucial to the bankruptcy system.[4]  Nothing more has been filed.

On September 12, 2025, for reasons to be detailed in this order, the court denied the motion to dismiss this case.

**Discussion**

1. **This Court Has Jurisdiction over the Chapter 7 Case Filed by Mr. Hardwick and the Chapter 7 Trustee is Charged with Administering the Estate for the Benefit of Creditors**

Mr. Hardwick argues that this court does not have jurisdiction over him or the Property.[5] He is incorrect.  Article I, § 8, clause 4 empowers Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., Art. I, §8, cl.4.  Congress exercised this power by enacting the current United States Bankruptcy Code which became effective on October 1, 1979.  The District Court for the Northern District of Illinois has referred all bankruptcy proceedings to the bankruptcy judges under 28 U.S.C. § 157 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois.  Venue lies properly under 28 U.S.C. § 1409.  This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A).

---

[4] The court filed its own motion to dismiss for failure to file documents (Dkt. #21) but will withdraw that motion as it has required Mr. Hardwick to file his schedules and allowing him the "out" of dismissal will not be in the best interest of this estate.

[5] Mr. Hardwick stated that under the Tenth Amendment, "the federal government lacks authority to impose involuntary bankruptcy liquidation or statutory compulsion upon him as a natural man without his consent." (Dkt. # 71.)

Upon filing a chapter 7 petition seeking relief under the Bankruptcy Code, a debtor voluntarily consents to the jurisdiction of the bankruptcy court. 28 U.S.C. § 1334.  The Bankruptcy Court for the Northern District of Illinois has provided information for unrepresented debtors on the court's website stating that chapter 7 "contemplates an orderly, court-supervised procedure by which a trustee takes over the assets of the debtor's estate, reduces them to cash, and makes distributions to creditors, subject to the debtor's right to retain certain exempt property and the rights of secured creditors." https://www.uscourts.gov/court-programs/bankruptcy/bankruptcy-basics/process-bankruptcy-basics.

Mr. Hardwick testified that he thought that a chapter 7 case would work better for him than the prior chapter 13 cases.  Now that he realizes that the Property is part of the bankruptcy estate and that it is no longer legally under his everyday control, he wants to dismiss the case. Although he is now an unrepresented debtor, he is still responsible for understanding the ramifications of his decisions. *In re Henstra*, 75 B.R. 260, 262 (Bankr. D. Minn. 1986) ("[D]ebtors can choose to exercise the powers incident to the filing on their own behalf. However, in light of the scope of the powers exercised, debtors acting on their own behalf must be held to the same standards regarding knowledge of the law and entitlement under it, as to which attorneys are held. Anything less would sanction and encourage the exercise of substantial power without accountability for abuse."); and *see In re Ard*, 666 B.R. 744, 751 (Bankr. D.S.C. 2025) ("If a party decides to appear *pro se*, [he] has the responsibility to educate [himself] about the rules and requirements of the court.").  Although it is true that "[a] document filed *pro se* is to be liberally construed and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Mr. Hardwick is a seasoned veteran of the bankruptcy court having filed in 2012, 2016,

and three times in 2025. "No leniency should be given to frequent and experienced pro se litigants who have a reasonable degree of legal sophistication." *In re Meltzer*, 534 B.R. 757, 771 (Bankr. N.D. Ill. 2015). Mr. Hardwick also appears to be an intelligent individual and testified that his parents, who originally owned the Property, determined that of their six children, he was the one who should take over the management and ownership of it.

When Mr. Hardwick filed the chapter 7 petition on June 25, 2025, he voluntarily consented to the jurisdiction of the Bankruptcy Court and in effect turned over his nonexempt property to the chapter 7 trustee, allowing her to determine whether value exists that could provide a benefit to his creditors. At this point in this case, the trustee has determined that there is likely value for creditors in the Property and has engaged the current mortgagee in possession to take control of the property under the Order dated August 7, 2025 (Dkt. # 32) and the Circuit Court of Cook County order dated November 19, 2024, making CCF the mortgagee in possession (Dkt. # 75, Exhibit G.) The trustee is attempting to preserve the value until she can determine the best course of action, and if she does, the court anticipates that she will seek authority from the court to do so.

**2. Mr. Hardwick Has the Burden of Proof to Show that Dismissal of This Case Is in the Best Interest of Creditors**

Section 707 of the Bankruptcy Code governs dismissal of a chapter 7 case. 11 USCS § 707(a). "A Chapter 7 case—even if filed voluntarily—can only be dismissed for 'cause' under § 707(a)." *In re Murphy*, No. 18-71012, 2022 WL 2288241, at *10 (Bankr. C.D. Ill. June 23, 2022). Section 707(a) "does not expressly refer to a voluntary dismissal by the debtor, [but] courts routinely apply it to such . . . motion[s]." *In re Hopper*, 404 B.R. 302, 307 (Bankr. N.D. Ill. 2009); and *see Murphy* at *10 ("Even though the statute does not specifically refer to the

debtor as the movant, the requirement of 'cause' under § 707(a) has long been construed to apply

to such motions.").

Section 707(a) includes examples of "for cause" reasons to dismiss, including debtor's

unreasonable delay that prejudices creditors, failure to pay fees and charges, and debtor's failure

to file the information required under Section 521(a) of the Code. 11 USCS § 707(a).  These

examples "are illustrative rather than exhaustive, and courts are not confined to these examples

in determining whether there is sufficient cause to justify dismissal." *Hopper* at 307; and *see* 11

U.S.C.A. § 102(3) ("'include' and 'including' are not limiting").  Courts have considered several

other factors in determining whether to grant or deny a debtor's Motion to Dismiss.  Those

factors include:

> (1) whether all creditors have consented; (2) whether the debtor is acting in good faith;
> (3) whether the dismissal would result in a prejudicial delay in payment; (4) whether
> dismissal would result in a reordering of priorities; (5) whether there is another
> proceeding through which the payment of claims can be handled; and (6) whether an
> objection to discharge, an objection to exemptions, or a preference claim is pending.
> *Murphy* at *10 (citing *Hopper* at 308).

Other facts courts have considered include "whether the debtor has manipulated the bankruptcy

process to frustrate creditors; whether the debtor is willing to make lifestyle changes to pay his

debts; or whether debtor concealed or misrepresented assets and/or sources of income." *In re*

*Sekendur*, 334 B.R. 609, 618–19 (Bankr. N.D. Ill. 2005).  Importantly though, "no list of factors

is exhaustive, and courts may consider any number of other factors that instruct whether

dismissal is in the best interest of all parties in interest, giving primary consideration to the

interest of creditors." *Murphy* at *11.  The debtor's interest "lies generally in securing an

effective fresh start upon discharge and in the reduction of administrative expenses leaving him

with resources to work out his debts." *Id*. at *11 (citing *In re Watkins*, 229 B.R. 907, 909 (Bankr.

N.D. Ill. 1999)).  On the other hand, "[t]he interest of creditors . . . is typically a question of prejudice." *Id*.  This means that there is cause to deny a dismissal if the dismissal would prejudice creditors. *Hopper* at 307; and *see In re Higbee*, 58 B.R. 71, 72 (Bankr. N.D. Ill. 1986) ("In construing Section 707(a) the courts have refused to dismiss a Chapter 7 proceeding where the dismissal would cause some plain legal prejudice to the creditors.").

In a case with facts very similar to Mr. Hardwick's, the bankruptcy court in *In re Murphy* denied the debtor's motion to dismiss.  The debtor, Travis Murphy, refused to turn over assets to the chapter 7 trustee, including several trucks and other equipment, and delayed numerous hearings set by the court.  Travis Murphy argued that dismissal would be in the interest of judicial economy as it would eliminate the need for further investigation and that a pending adversary proceeding filed by the chapter 7 trustee would be moot.  The court did not buy his arguments, holding that dismissal would perpetuate the debtor's long history of evading and hindering his creditors.  The *Murphy* court explained that a "key benefit" of requiring the debtor to remain in chapter 7 is that it "provides creditors the assurance of an equitable distribution of [the] debtor's nonexempt assets by [the] trustee under the supervision of the bankruptcy court." *Murphy* at *13 (citing *Hopper* at 404 B.R. at 310).  Finally, the *Murphy* court recounted how the case was clearly filed to hinder creditors, that too much time had passed to find that dismissal was in the best interest of creditors and dismissal would "condone [Travis Murphy's] abuse and manipulation of the bankruptcy system." *Murphy* at *13.

   3. **Mr. Hardwick Has Not Met His Burden of Proof to Dismiss His Chapter 7 Case**

As discussed above, Mr. Hardwick bears the burden of proof to show that cause exists to dismiss his chapter 7 case.  "Like any other movant, a debtor seeking voluntary dismissal of his chapter 7 case has the burden of showing that cause exists for the relief sought." *Murphy* at *10;

and *see In re Sgambati*, 584 B.R. 865, 885 (Bankr. E.D. Wis. 2018) ("The debtor bears the

burden of demonstrating cause for voluntary dismissal."); *In re Elmore*, 668 B.R. 122, 130

(Bankr. D.S.C. 2025) ("The debtor bears the burden of showing that cause exists to dismiss the

case.").

Mr. Hardwick has not met his burden of proof supporting dismissal of his chapter 7 case.

When determining whether cause exists to dismiss Mr. Hardwick's case, courts must consider

"the effect of dismissal on the debtor, creditors, trustees, and other parties in interest." *Murphy* at

*11. In Mr. Hardwick's case, several considerations weigh against granting his Motion to

Dismiss. Mr. Hardwick has a well-documented history of refusing to comply with the

requirements of the Bankruptcy Code and orders of this court as well as the state court. Mr.

Hardwick has filed two previous chapter 13 petitions which were dismissed for failure to submit

the required schedules and statement of financial affairs.[6] In the present bankruptcy case, Mr.

Hardwick refused to submit on a timely basis the required schedules or statement of financial

affairs despite a Notice for Deficiency (Dkt. # 11), a Request for Final Notice of Deficiency

(Dkt. # 18), and the Court's Motion to Dismiss for Failure to File Required Documents (Dkt. #

21.) At the hearing on September 3, 2025, the court gave Mr. Hardwick another chance to file

his completed schedules and statement of financial affairs by September 10, 2025 (Dkt. # 61.)

In response to the September 3 order, Mr. Hardwick submitted schedules I, J, and "J-2,"

on September 9, all of which were incomplete (Dkt. # 72.) That same day, he submitted an

incomplete statement of financial affairs (Dkt. # 73.) At the September 11, 2025 hearing, Mr.

---

[6] Mr. Hardwick has also failed to pay any filing fees on his prior cases yet has asked for relief from the
Bankruptcy Court.

Hardwick explained that he needed "more time to fill them out because [he had] to get certain things done" and did not elaborate on what those certain things were.  Regarding submission of schedules, Mr. Hardwick said, "Every time I was doing it, it kept deleting stuff after I tried to grab certain forms and then it wouldn't, I don't know, I filed it."  As to the statement of financial affairs, Mr. Hardwick said, "I filled out the whole thing and since it's an online document, as I kept going, I had the hardest time.  It kept starting over and putting numbers that wasn't correct from other things."  The court advised Mr. Hardwick that he could find copies of the required documents at the clerk's office on the seventh floor of the courthouse and that he could submit handwritten schedules directly to the clerk.  The court then gave Mr. Hardwick until September 15, 2025 to submit them.  Despite explaining to Mr. Hardwick exactly how to submit his schedules and statement of financial affairs, he still did not submit the completed required documents.

Successful administration of the bankruptcy system requires debtors to be fully transparent in disclosing their assets, liabilities and the identity of creditors.  "The very integrity of the bankruptcy court and the successful administration of the bankruptcy system rest upon compliance with the debtor's obligation of disclosure." *In re Gauri*, 663 B.R. 88, 99 (Bankr. N.D. Ill. 2024).  Time and again, Mr. Hardwick has undermined "the successful administration of the bankruptcy system" by refusing to submit the documents required under the Bankruptcy Code.  Mr. Hardwick's refusal to comply with the Code is just one factor warranting the denial of his Motion to Dismiss.  "Omissions from bankruptcy schedules and statement of financial affairs constitute a false oath for purposes of section 727(a)(4)(A)." *Sgambati* at 871 (chapter 7 debtor's motion to dismiss denied for, among other reasons, failure to list all creditors and failure to accurately report wages and expenses).  Without the schedules and statement of financial affairs,

it is impossible to know what Mr. Hardwick's assets are, the identity of his unsecured creditors, what his household income is, or whether other claims exist.

Mr. Hardwick has also not been transparent with the court, a vital part of the bankruptcy process. He has openly defied the court's order compelling him to comply with the court's order of August 7 allowing the mortgagee in possession to collect rents and maintain the Property for the chapter 7 trustee.[7] According to statements from CCF's counsel and Mr. Hardwick's own statements made under oath, Mr. Hardwick has encumbered the Trustee's attempt to protect the Property with the court authorized assistance. Mr. Hardwick emphasized at the hearing on September 11 that he plans to prevent CCF or its agents to collect rents or manage the Property. Refusal to allow the collection of the rents and obstructing CCF's ability to communicate with tenants and maintain the property are all in violation of this court's orders. Just as in the *Murphy* case, allowing this behavior and disrespect of the bankruptcy system, which Mr. Hardwick has repeatedly and voluntarily entered, condones "his abuse and manipulation of the system and open[s] the door to further misconduct." *Murphy* at *13. Mr. Hardwick cannot be allowed to benefit from his abuse of the bankruptcy system process.

Finally, Mr. Hardwick has not convinced this court that his refinancing is realistic. When provided with the opportunity to put forth his evidence, he failed to do so. During this court's hearing Mr. Hardwick stated, "I have refinancing options up . . . to $1.5 to 2,000,000 off my property," which would allow him "to payoff certain debts." He provided nothing more than a glance at something on his phone—no witnesses or even documentation of a loan commitment

---

[7] Mr. Hardwick previously defied the state court's order granting CCF possession of the Property.

were produced.  Such vague assertions of refinancing do not convince the court that dismissal would be in the creditors' best interest.[8]

Dismissing Mr. Hardwick's case would prejudice creditors and allow him to continue to play games of avoidance with this court and the state court.  He has not demonstrated that he has any intention of paying creditors.  Just as in the *Hopper* case, "[a]bsent court oversight of payment of creditors by the debtor, creditors are prejudiced.  They bear the risk of not being paid, a very unlikely risk in a chapter 7 case.  The method for insuring payment of creditors out of any non-exempt portion of the estate's assets is through administration under the trustee system." *Hopper* at 310.

One final factor weighs heavily against Mr. Hardwick's Motion to Dismiss.  Creditors and parties in interest are entitled to notice of a motion to dismiss.  "[I]f a creditor is not given reasonable notice of the bankruptcy case and the relevant bar dates, its claim cannot be constitutionally discharged." *In re O'Shaughnessy*, 252 B.R. 722, 729 (Bankr. N.D. Ill. 2000) (after debtor's Chapter 11 plan was confirmed, creditor was allowed time to file proof of claim because debtor purposely omitted creditor from schedules).  In bankruptcy, "[t]he nature of the required notice and hearing is flexible. However, it must be reasonable in light of the circumstances of the particular case.  Consistent with the due process clause of the Fifth Amendment, notice must be reasonably calculated to apprise the parties of the pendency of the action and provide them an opportunity to be heard." *In re Kelly*, 392 B.R. 750, 755 (W.D. Wis.

---

[8] Mr. Hardwick's behavior toward CCF also shows an unwillingness to repay what CCF is allegedly owed. At the September 11, 2025, hearing, when asked if he sought to dismiss his chapter 7 case because he wanted to pay CCF less than it was owed, Mr. Hardwick said, "I want to . . . pay [CCF] what's right and what should be equitable and without hiding behind your waivers and usury."  He also claimed that the state court orders were entered without due process.

14

2007); and *see Matter of Bryant,* 28 B.R. 362, 365 (Bankr. N.D. Ind. 1983) (court refused to grant debtor's voluntary dismissal because one creditor was not listed and given opportunity to timely object to dismissal, "[t]hus this case is not one in which all creditors have consented affirmatively or by indirection."). Because of Mr. Hardwick's failure to list creditors in this case, it is not possible that creditors have received notice of the case or the request to dismiss it. The only active creditor in this case, CCF, has objected to the motion to dismiss (Dkt. # 76) and the chapter 7 trustee, who holds the fiduciary responsibility to all creditors, has objected. In light of the lack of notice to creditors, granting Mr. Hardwick's motion to dismiss would violate those creditors' due process rights under the Fifth Amendment.

From his conduct and testimony under oath, it is clear to the court that Mr. Hardwick does not intend to abide by the requirements of the Bankruptcy Code, nor will he comply with the orders of this court. His conduct throughout this case and the two prior cases has repeatedly demonstrated that he has no interest in dealing honestly and fairly with his creditors or with the chapter 7 trustee. Rather, he has shown a penchant for frustrating his creditors' collection efforts and the trustee's administration of the case. Creditors will clearly be worse off if the case is dismissed.

For all of these reasons, the court denies the motion to dismiss.

Dated:  9/16/2025

                                        _____
Honorable Deborah L. Thorne
United States Bankruptcy Judge